**ORIGINAL**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: /23/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - v. -

JOE MEDINA SERRANO,

      Defendant.

- - - - - - - - - - - - - - - - - X

ORDER    351

19 Cr. 391 (VM)

WHEREAS, with the defendant's consent, his guilty plea allocution was made before a United States Magistrate Judge on January 7, 2020;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has determined that the defendant entered the guilty plea knowingly and voluntarily and that there was a factual basis for the guilty plea;

IT IS HEREBY ORDERED that the defendant's guilty plea is

accepted.

Dated: New York, New York

       January, 2020

                              SO ORDERED:

                              _____
                              HONORABLE VICTOR MARRERO
                              UNITED STATES DISTRICT JUDGE
                              SOUTHERN DISTRICT OF NEW YORK

K171medp

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                          19 Cr. 351 (VM)

5  JOE MEDINA SERRANO,

6              Defendant.                  Plea

7  ------------------------------x

8                                          New York, N.Y.
                                           January 7, 2020
9                                          11:10 a.m.

10

   Before:
11
                   HON. DEBRA C. FREEMAN,
12
                                           Magistrate Judge
13

14                     APPEARANCES

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   BY:  DANIEL G. NESSIM
17      Assistant United States Attorney

18 FEDERAL DEFENDERS OF NEW YORK INC.
        Attorneys for Defendant
19 BY:  JULIA L. GATTO, ESQ.

20

21

22

23

24

25

K171medp

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3     for the record.

4          MR. NESSIM:  Good morning, your Honor.  Daniel Nessim

5     for the government.

6          THE COURT:  Good morning.

7          MS. GATTO:  Good morning, your Honor.  Federal

8     Defenders of New York by Julia Gatto for Mr. Serrano.

9          THE COURT:  Good morning.

10         THE DEFENDANT:  Good morning.

11         THE COURT:  Mr. Serrano, the indictment in this case

12    charges you with a felony crime, and you have a right to a

13    trial on this charge before a United States district judge.  If

14    you are convicted, if you were found guilty, you'll be

15    sentenced by a United States district judge.  Ordinarily a

16    defendant who wishes to enter a plea to this type of charge

17    would do that before the district judge, and if the defendant

18    wishes to enter a guilty plea, that judge would then conduct

19    the so-called plea allocution, which is the question-and-answer

20    session that must accompany the entry of such a plea.  With the

21    defendant's consent, however, a United States magistrate judge,

22    such as myself, also has the authority to take a plea.  If you

23    were to consent to proceed before a magistrate judge for the

24    purpose of entering a plea, you would receive all of the same

25    procedural protections as you would receive if you were

K171medp

1    proceeding before the district judge.  Do you understand that?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Is it your wish to consent to proceed

4    before a magistrate judge for the purpose of entering a plea?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  I have a consent form that's been handed

7    up.  It's entitled Consent to Proceed Before a United States

8    Magistrate Judge On a Felony Plea Allocution.  Did you sign

9    this form?

10            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  Before you signed it did you discuss it

12    with your attorney?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  She explained it to you?

15            THE DEFENDANT:  Yes, ma'am.

16            THE COURT:  Have any threats or promises of any kind

17    been made to you to cause you to agree to this procedure today?

18            THE DEFENDANT:  No.  No, ma'am.

19            THE COURT:  I will accept the consent.

20            In order to take your plea, I must ask you some

21    questions for which I need to place you under oath.  Would you

22    please raise your right hand.

23            (Defendant sworn)

24            THE COURT:  Okay.  Please state your full name for the

25    record.

K171medp

```
 1              THE DEFENDANT:  Joe Medina Serrano.

 2              THE COURT:  Are you a United States citizen?

 3              THE DEFENDANT:  Yes, ma'am.

 4              THE COURT:  How old are you?

 5              THE DEFENDANT:  58.

 6              THE COURT:  How far did you go in school?

 7              THE DEFENDANT:  Twelfth grade.

 8              THE COURT:  Are you now or have you recently been

 9    under the care of a doctor for any reason?

10              THE DEFENDANT:  Say again?

11              THE COURT:  I said, are you now or have you recently

12    been under the care of a doctor for any reason?

13              THE DEFENDANT:  Well, outside, for my diabetics, my

14    doctor from outside.  I've been -- I see her probably twice a

15    month.

16              THE COURT:  I'm sorry.  You see a doctor twice a month

17    for?

18              THE DEFENDANT:  For diabetic, like to check -- like I

19    got to go check out blood, whatever.

20              MS. GATTO:  Diabetes.

21              THE COURT:  Diabetes?

22              THE DEFENDANT:  Yeah.

23              THE COURT:  Do you take any medication that could in

24    any way affect your ability to participate in these proceedings

25    today?
```

K171medp

1              THE DEFENDANT:  No, no.  No, ma'am.

2              THE COURT:  Okay.  Does your diabetes or any other

3    condition that you have affect your ability to participate

4    fully today?

5              THE DEFENDANT:  No, ma'am.

6              THE COURT:  Have you seen a psychiatrist or

7    psychologist recently?

8              THE DEFENDANT:  One right here in prison, yeah, I did.

9              THE COURT:  You saw someone when you were in prison?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you have any kind of mental health

12   condition that would affect your ability to participate today?

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  Okay.  Just sort of general anxiety,

15   things like that?

16             THE DEFENDANT:  Yeah.  I'm good.

17             THE COURT:  Okay.  Do you take any medications at all?

18   If you take medication, what do you take?

19             THE DEFENDANT:  Well, for the diabetic?  Yes, ma'am.

20             THE COURT:  What kind of medications do you take?

21             THE DEFENDANT:  Glipizide.  Glipizide, 10-milligram.

22             THE COURT:  For what kinds of conditions?  Besides

23   the --

24             THE DEFENDANT:  For diabetic.

25             THE COURT:  Just for the diabetes?

K171medp

1        THE DEFENDANT:  Yeah, that's it.

2        THE COURT:  Okay.  Do you have any condition that

3   affects your ability to see or to hear?

4        THE DEFENDANT:  No, ma'am.

5        THE COURT:  Do you have any condition that affects

6   your ability to think or to reason or to understand or make

7   decisions or judgments on your own behalf?

8        THE DEFENDANT:  No, ma'am.

9        THE COURT:  Have you ever been treated for drug

10  addiction or alcoholism?

11       THE DEFENDANT:  No, ma'am.

12       THE COURT:  As you appear before me today, are you

13  under the influence of any kind of drugs or alcohol or

14  medication?

15       THE DEFENDANT:  No, ma'am.

16       THE COURT:  Is your mind clear today?

17       THE DEFENDANT:  Yes, ma'am.

18       THE COURT:  Do you generally feel all right today?

19       THE DEFENDANT:  Yes, ma'am.

20       THE COURT:  Do you have any trouble understanding the

21  questions I'm asking you?

22       THE DEFENDANT:  No, ma'am.

23       THE COURT:  Have you received a copy of the indictment

24  in this case?

25       THE DEFENDANT:  Yes, ma'am.

K171medp

1    THE COURT:  Have you had a chance to read it or do you
2    want me to take the time to read it to you?
3    THE DEFENDANT:  No.  I read it.
4    THE COURT:  Do you understand what it says you did?
5    THE DEFENDANT:  Yes, ma'am.
6    THE COURT:  Have you had enough time to talk to your
7    attorney about the charge against you and about how you wish to
8    plead?
9    THE DEFENDANT:  Yes, ma'am.
10    THE COURT:  Are you satisfied with the representation
11    and advice given to you by your attorney?
12    THE DEFENDANT:  Yes, ma'am.
13    THE COURT:  Are you ready to enter a plea?
14    THE DEFENDANT:  Yes, ma'am.
15    THE COURT:  Okay.  Bearing in mind that the indictment
16    charges in Count One that you violated Title 21 of the United
17    States Code Section 846, which makes it a crime to conspire
18    with others to violate the narcotics laws of the United States,
19    and more specifically that this was a conspiracy to distribute
20    and possess with intent to distribute 1 kilogram and more of
21    heroin, how do you wish to plead -- wait.  Before I do that,
22    why does the plea agreement talk about heroin and also fentanyl
23    when the copy of the indictment that I've gotten seems only to
24    talk about heroin?
25    MR. NESSIM:  Is that a copy of the superseding

K171medp

1    indictment, your Honor, or the --

2              THE COURT:  It is not.

3              MR. NESSIM:  That might be the issue.  The superseding

4    indictment has a two-object --

5              THE COURT:  May I have a copy of the superseding

6    indictment.

7              MR. NESSIM:  Yes.  I don't have one before me.

8              THE COURT:  Hold on a second while we get a copy of

9    the superseding indictment so I'm looking at the operative

10   charging instrument.

11             I assume defendant was arraigned on the superseding

12   indictment?

13             MR. NESSIM:  Yes, your Honor.

14             THE COURT:  All right.  Let's start that again.

15             You've received a copy of the first superseding

16   indictment?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  You've gone over that with your counsel?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  You're not looking for me to read it to

21   you, is that correct?

22             THE DEFENDANT:  That's correct.

23             THE COURT:  You understand fully what it says you did?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  All right.  So the charge in the first

K171medp

1 superseding indictment is that you conspired with others to

2 violate the narcotics laws of the United States in violation of

3 Title 21 of the United States Code Section 846. And it's more

4 specifically charged that this was a conspiracy to distribute

5 and possess with intent to distribute both 1 kilogram and more

6 of heroin and 400 grams and more of fentanyl. How do you wish

7 to plead to this conspiracy charge, guilty or not guilty?

8       THE DEFENDANT: Guilty.

9       THE COURT: All right. Because you are proposing to

10 enter a guilty plea, I have to ask you some additional

11 questions to be sure that you understand the nature of this

12 charge and the consequences of your plea and also to ensure

13 that your plea is voluntary.

14       First I want you to understand that if you are

15 convicted of this charge, you could face a maximum sentence of

16 life imprisonment, a mandatory minimum term of imprisonment of

17 ten years, a maximum term of supervised release of life, a

18 mandatory minimum term of supervised release of five years, a

19 maximum fine of the greatest of $10 million or twice the gross

20 pecuniary gain or monetary gain that you derived from the

21 offense or twice the gross pecuniary loss to persons other than

22 yourself resulting from the offense, and a mandatory special

23 assessment of $100. Do you understand all of that?

24       THE DEFENDANT: Yes, ma'am.

25       THE COURT: Do you also understand that if convicted

K171medp

1    of this crime, the Court may order you to pay restitution to

2    any victims of the crime?

3             THE DEFENDANT:  Yes, ma'am.

4             THE COURT:  Do you also understand that if you are

5    convicted, you could be required to forfeit all property, real

6    and personal, that constitutes or derives from proceeds

7    traceable to your crime?

8             THE DEFENDANT:  Yes, ma'am.

9             THE COURT:  Do you understand that if as part of your

10   sentence you are placed on a term of supervised release and you

11   then violate any condition of that release, your supervised

12   release may be revoked and you may face an additional term of

13   imprisonment?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  Do you understand that if that should

16   happen -- in other words, if your supervised release is

17   revoked -- the Court could require you to serve in prison all

18   or part of the term of supervised release that's authorized by

19   law for this offense without giving you credit for time you may

20   have already served on supervised release?

21            THE DEFENDANT:  Yes, ma'am.

22            THE COURT:  Do you understand that you have the right

23   to plead not guilty to this charge and the right to a speedy

24   and public trial and a jury trial if you wish?

25            THE DEFENDANT:  Yes, ma'am.

K171medp

1          THE COURT:  Do you understand that if you previously

2     entered a plea of not guilty to this charge, you are not

3     required to change your plea?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Do you understand that if you were to go

6     to trial, the burden would be on the government to prove your

7     guilt by competent evidence beyond a reasonable doubt?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that if you were to go

10     to trial, you would be presumed to be innocent unless and until

11     the government did prove your guilt beyond a reasonable doubt?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Do you understand that if you were to go

14     to trial by jury, a jury composed of 12 people selected from

15     this district would have to agree unanimously that you are

16     guilty?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Do you understand that at a trial, you

19     would be entitled to be represented by an attorney, and if you

20     could not afford to hire one, an attorney would be provided to

21     you free of charge?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you understand that your right to be

24     represented by counsel and, if necessary, to have the Court

25     appoint counsel for you applies not only to trial but also to

K171medp

1    every other stage of the proceedings against you?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Do you understand that at a trial, you

4    would be entitled, through your attorney, to cross-examine any

5    witnesses called by the government to testify against you?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Do you understand that at a trial, you

8    would be entitled to testify and present evidence on your own

9    behalf?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Do you understand that this means that you

12    would have the right to call witnesses to testify on your

13    behalf?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Do you also understand that you would be

16    entitled to have the Court issue subpoenas to compel witnesses

17    to appear to testify at trial?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Do you understand that at a trial, you

20    would not be required to incriminate yourself -- that is, you

21    would not be required to testify against yourself?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you understand that this means that at

24    a trial, you would have the right to testify if you wanted to

25    do so, but no one could force you to testify if you did not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K171medp

1    want to do so, and furthermore, no suggestion or inference of

2    guilt could be drawn if you chose not to testify at trial?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  Do you understand that if you go forward

5    with your guilty plea, you will be giving up all of these types

6    of protections that I just described, including your very right

7    to a trial, and the only remaining step will be the imposition

8    of sentence by the district judge in this case, who is Judge

9    Marrero?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  Do you understand that if any of the

12   answers that you give me today prove to be untruthful, you

13   could face a separate prosecution for perjury or for making a

14   false statement to the Court?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  Do you understand that if you plead guilty

17   and your guilty plea is accepted and you are adjudged guilty,

18   that adjudication may deprive you of valuable civil rights,

19   such as the right to vote or to hold public office or to serve

20   as a juror or to possess a firearm?

21           THE DEFENDANT:  Yes, I do.

22           THE COURT:  In light of everything I've said to you so

23   far, do you still wish to plead guilty?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Do you understand that the decision as to

K171medp

1    the appropriate sentence in your case will be entirely up to

2    Judge Marrero?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Do you understand that Judge Marrero will

5    have discretion in determining your sentence and that his

6    discretion will be limited only by what the law requires for

7    this particular charged offense?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Do you understand that with respect to

10   your sentence, the Court will have the authority to impose an

11   order of restitution and the obligation to impose the special

12   assessment?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Do you also understand that in determining

15   your sentence, the Court will have the obligation to consider

16   the so-called Sentencing Guidelines and even though it will not

17   be required -- I'm sorry.  Let me rephrase that.

18             Do you understand that in determining your sentence,

19   the Court will have the obligation to calculate the so-called

20   Sentencing Guidelines and to consider them even though it will

21   not be required to sentence you within the guidelines range?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Have you and your attorney had a chance to

24   talk about how the guidelines may be calculated in your case?

25             THE DEFENDANT:  Yes, ma'am.

K171medp

1      THE COURT:  Do you understand that the Court will not

2  be able to determine the guidelines for your case until after a

3  presentence report has been completed and both you and the

4  government have had the chance to challenge the facts reported

5  there by the probation officer?

6      THE DEFENDANT:  Yes, ma'am.

7      THE COURT:  Do you understand that even after the

8  guidelines calculation has been made for a case, the sentencing

9  judge will have the authority to impose a sentence that is

10  either less severe or more severe than the sentence recommended

11  by the guidelines, as long as it's within the statutory maximum

12  for the charged crime?

13      THE DEFENDANT:  Yes, ma'am.

14      THE COURT:  Do you understand that in addition to

15  considering the Sentencing Guidelines, the Court will also have

16  to consider possible departures from the guidelines and a

17  number of different factors in deciding on the appropriate

18  sentence to impose in your case?

19      THE DEFENDANT:  Yes, ma'am.

20      THE COURT:  Have you and your attorney had a chance to

21  talk about the various factors that are listed in the relevant

22  provision of law that's Title 18 of the U.S. Code Section

23  3553(a), and about how those different factors may apply to you

24  in your particular case?

25      THE DEFENDANT:  Yes, ma'am.

K171medp

1        THE COURT:  Do you understand that those factors

2   include, but are not limited to, the actual conduct in which

3   you engaged, the victim of the offense, the role you played in

4   the offense, whether or not you have accepted responsibility

5   for your acts, whether you have any criminal history, and

6   whether you have engaged in any obstruction of justice?

7        THE DEFENDANT:  Yes, ma'am.

8        THE COURT:  Do you understand that even if you end up

9   shocked and disappointed by your sentence, you will still be

10  bound by your guilty plea?

11       THE DEFENDANT:  Yes, ma'am.

12       THE COURT:  Do you understand that under some

13  circumstances you or the government may have the right to

14  appeal the sentence that is imposed?

15       THE DEFENDANT:  Yes, ma'am.

16       THE COURT:  Do you understand that there is no parole

17  in the federal system and that if you are sentenced to prison,

18  you will not be released on parole?

19       THE DEFENDANT:  Yes, ma'am.

20       THE COURT:  Understanding everything I have now told

21  you, do you still wish to plead guilty?

22       THE DEFENDANT:  Yes, ma'am.

23       THE COURT:  I have a copy of a plea agreement in this

24  case.  It's a letter dated January 6, 2020, from the Office of

25  the United States Attorney to your counsel.  Did you sign this

K171medp

1   plea agreement?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Before you signed it did you discuss it

4   with your attorney?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Did she explain to you all of its terms

7   and conditions?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  I've reviewed the plea agreement, and I

10  see that it contains an analysis of how the Sentencing

11  Guidelines may impact on any prison term that may be imposed in

12  your case.  The agreement notes there is a statutory minimum

13  term of imprisonment of 120 months and that if you did not

14  receive relief from the statutory minimum, your sentence would

15  be at least 120 months, in other words, the amount of that

16  minimum.  The agreement also states the conclusion, however,

17  that based on information currently available to the

18  government, you would appear to satisfy the conditions for

19  relief from the statutory mandatory minimum, and based on that

20  information, the guidelines range for a sentence in your case

21  would be from 51 to 63 months.  Do you understand that?

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Do you also understand that the agreement

24  states the conclusion that under the guidelines, the applicable

25  range for a fine in your case would be anywhere from $20,000 --

K171medp

1  counsel, take a look at the sentencing range in the plea

2  agreement.  Page 3.

3      MR. NESSIM:  Yes, your Honor.

4      THE COURT:  Is that supposed to be 10 million?

5      MR. NESSIM:  Yes, your Honor.

6      THE COURT:  You seem to have a comma in the wrong

7  place.

8      MS. GATTO:  You're missing a zero.

9      THE COURT:  Actually, it shouldn't be a comma; it

10  should be a decimal point.

11      MR. NESSIM:  It's just a --

12      THE COURT:  Well, actually, you should have --

13      MR. NESSIM:  There should be one extra zero, your

14  Honor.

15      THE COURT:  One extra zero before the comma.  Okay.

16      MR. NESSIM:  Right.

17      THE COURT:  So it's 10 million.

18      MR. NESSIM:  It is 10 million.

19      THE COURT:  Okay.  So do you understand, under the

20  terms of the plea agreement, the applicable range for a fine in

21  your case is anywhere from 20,000 to $10 million?

22      THE DEFENDANT:  Yes, ma'am.

23      THE COURT:  Do you understand that Judge Marrero is

24  not bound by the analysis contained in the plea agreement

25  either with respect to whether you're entitled to relief from

K171medp

1     the mandatory minimum or with respect to the guidelines range

2     and that he will do his own analysis, which may be different

3     from the one stated in the plea agreement?

4               THE DEFENDANT:  Yes, ma'am.

5               THE COURT:  Do you understand that even if Judge

6     Marrero agrees with the analysis in the plea agreement and

7     concludes the appropriate guidelines range for a sentence in

8     your case would be from 51 to 63 months' imprisonment, he would

9     still be free to impose a sentence of less than 51 or more than

10    63 months?

11              THE DEFENDANT:  Yes, ma'am.

12              THE COURT:  Do you also understand that there is the

13    possibility that Judge Marrero will not find that you're

14    entitled to relief from the mandatory minimum?

15              THE DEFENDANT:  Yes, ma'am.

16              THE COURT:  Do you understand that under the terms of

17    this plea agreement, you are agreeing that no so-called

18    departure from the guidelines range set out in the plea

19    agreement, in other words, the range of 51 to 63 months, would

20    be warranted and you will not seek one even though you are

21    reserving your right to seek a sentence outside of that range

22    based on those factors set out in Section 3553(a)?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Do you understand that under the terms of

25    this plea agreement, as long as you are sentenced to no more

K171medp

1    than 63 months' imprisonment, you're giving up your right to

2    challenge your prison sentence both by appeal to the Court of

3    Appeals and also by any further application to this Court?

4              THE DEFENDANT: Yes, ma'am.

5              THE COURT: Do you also understand that you are

6    agreeing not to appeal any term of supervised release that is

7    less than or equal to the statutory maximum of life?

8              THE DEFENDANT: Yes, ma'am.

9              THE COURT: Do you also understand that you are

10   agreeing not to appeal any fine that is less than or equal to

11   $10 million?

12             THE DEFENDANT: Yes, ma'am.

13             THE COURT: Do you also understand you are agreeing

14   not to appeal any special assessment that's less than or equal

15   to $100?

16             THE DEFENDANT: Yes, ma'am.

17             THE COURT: Do you also understand that under the

18   terms of this plea agreement, you are admitting the forfeiture

19   allegation contained in the first superseding indictment with

20   respect to Count One and you are agreeing to forfeit to the

21   United States a sum of money in United States currency

22   representing proceeds traceable to the commission of that

23   crime?

24             THE DEFENDANT: Yes, ma'am.

25             THE COURT: Do you understand that under the terms of

K171medp

1   this plea agreement --

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Wait, wait, wait.  I haven't asked you a

4   question yet.

5           Do you understand that under the terms of this plea

6   agreement, even if it turns out that the government withheld

7   from your counsel certain information that would be helpful to

8   you in defending yourself at trial, you're giving up your right

9   to complain about that?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Counsel, I note that this agreement has in

12  it a paragraph about immigration consequences.  Does either

13  counsel have reason to believe this defendant may not be a

14  United States citizen, as he has informed the Court?

15          MR. NESSIM:  I do not, your Honor.

16          MS. GATTO:  No, your Honor.

17          THE COURT:  All right.  Mr. Medina Serrano, I don't

18  have any reason to believe that you're not a United States

19  citizen.  You told me that you are.  But just in an excess of

20  caution, I want you to understand that if that is not true and

21  if you are not a citizen, your plea of guilty and the

22  conviction that would presumably follow could have immigration

23  consequences, including removal from the United States, which

24  in the circumstances could be mandatory, denial of citizenship

25  in the future, and denial of re-entry to the United States in

K171medp

1  the future.  Do you understand all of that?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Counsel, before I go on, are there any

4  other particular provisions of the plea agreement that you

5  would like me to review with this defendant to make sure he

6  understands?

7            MR. NESSIM:  No, your Honor.

8            MS. GATTO:  No, your Honor.  Thank you.

9            THE COURT:  All right.  Apart from what is in the plea

10 agreement itself, have any promises of any kind been made to

11 you to influence you to plead guilty?

12            THE DEFENDANT:  No, ma'am.

13            THE COURT:  Have any promises been made to you

14 regarding the actual sentence you will receive?

15            THE DEFENDANT:  No, ma'am.

16            THE COURT:  Do you understand that no one, including

17 your attorney or the government, or this Court, can give you

18 any assurance as to what your sentence will be, as your

19 sentence will be determined solely by the sentencing judge

20 after that judge has ruled on any challenges to the presentence

21 report, has calculated the Sentencing Guidelines, and has

22 determined whether there are grounds to adjust the guidelines

23 range or to sentence you outside of that range?  Do you

24 understand all of that?

25            THE DEFENDANT:  Yes, ma'am.

K171medp

1          THE COURT:  Have any threats been made to you, either

2    directly or indirectly, to influence how you plead today?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  No, no.  Have any threats been made to you

5    by anyone --

6          THE DEFENDANT:  No, ma'am.  No, ma'am.

7          THE COURT:  -- to influence --

8          THE DEFENDANT:  Sorry about that.

9          THE COURT:  -- to influence your plea?  No?

10          THE DEFENDANT:  No.

11          THE COURT:  Is your plea voluntary and made of your

12    own free will?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Before I ask you to explain what you did,

15    let me ask the government, please, to summarize the elements

16    that it would need to establish at trial to sustain the charge.

17          MR. NESSIM:  Yes, your Honor.

18          The elements of this crime, all of which need to be

19    proven at trial beyond a reasonable doubt, are that:

20          First, two or more persons agreed to violate the

21    federal drug laws;

22          Second, that the defendant knew the object of the

23    conspiracy, to violate the federal drug laws;

24          Third, that the defendant knowingly and voluntarily

25    involved himself in the conspiracy; and

K171medp

1          Third, that the conspiracy involved 1 kilogram or more

2     of heroin and 400 grams and more of fentanyl.

3          The government would also need to prove by

4     preponderance of the evidence that venue is proper in the

5     Southern District.

6          THE COURT:  All right.  Mr. Medina Serrano, did you

7     just now hear the attorney for the government summarize the

8     elements of the crime that it would have to prove at trial in

9     order to obtain a conviction against you?

10          THE DEFENDANT:  Yes, I did.

11          THE COURT:  Do you understand that the government

12     would have to prove each of the elements of the crime beyond a

13     reasonable doubt in order to prevail on its case against you?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Do you still wish to proceed with your

16     plea?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Did you in fact commit the offense that's

19     charged in Count One of the first superseding indictment?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Can you please tell us in your own words

22     what you did that makes you guilty of this crime.

23          THE DEFENDANT:  I will.

24          Okay.  In '19, 2019, I, Joe Serrano, agreed to -- with

25     others to help them distribute -- distribute drugs.  I was a

K171medp

1    courier and transporter.  The acts took place including

2    Manhattan.  The drugs include more than 1 kilogram of heroin

3    and more than 400 grams of fentanyl.

4            THE COURT:  Fentanyl?

5            THE DEFENDANT:  Yeah, fentanyl.  I knew what I was

6    doing was wrong and against the law.

7            THE COURT:  You agreed with at least one other person

8    to help with the distribution of these drugs and you acted as a

9    courier, is that what you said?  Did I hear you correctly?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  Okay.  Did you understand that what you

12   were agreeing to do was to transport heroin and fentanyl?

13           THE DEFENDANT:  Yes, I did.

14           THE COURT:  Okay.  I think I heard you say that as

15   part of your role as a courier, you were here in Manhattan, is

16   that right?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Delivering drugs to Manhattan, is that

19   right?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Okay.  Do either counsel believe any

22   additional facts need to be elicited for a satisfactory

23   allocution?

24           MR. NESSIM:  No, your Honor.

25           MS. GATTO:  No, your Honor.

K171medp

1            THE COURT:  Do either counsel believe there are any

2    additional questions of any kind that I should be asking this

3    defendant today?

4            MR. NESSIM:  No, your Honor.

5            MS. GATTO:  No, your Honor.

6            THE COURT:  And do either of you know any reason I

7    should not recommend acceptance of this plea?

8            MR. NESSIM:  No.

9            MS. GATTO:  No, Judge.  Thank you.

10           THE COURT:  All right.  Based on my colloquy with

11   Mr. Medina Serrano, I conclude that he does understand the

12   nature of this charge against him and the consequences of his

13   plea.  I'm also satisfied that his plea is voluntary and that

14   there is a factual basis for the plea.

15           I'll also note for the record that I see no issue here

16   with respect to Mr. Medina Serrano's competence to enter a

17   plea.  He seemed fully able to participate in these proceedings

18   today.

19           Accordingly, I hereby recommend that Judge Marrero

20   accept the proffered plea to Count One of the first superseding

21   indictment in S1 19 Cr. 351.

22           Has Judge Marrero set a sentencing date?

23           MR. NESSIM:  No, your Honor.  I would ask that the

24   Court set a control date.

25           THE COURT:  All right.  Defendant is in custody?

K171medp

1           MR. NESSIM:  Yes, your Honor.

2           THE COURT:  So 90 days.

3           April 6 is the control date.  Please be in touch with

4    Judge Marrero's chambers.

5           Is there any issue here as to bail?

6           MR. NESSIM:  No, your Honor.

7           THE COURT:  I'm going to ask the government, please,

8    to prepare the prosecution case summary for purposes of the

9    presentence report and to deliver it to the probation

10   department no later than 14 days from today.

11          I'm going to ask defense counsel, please, to contact

12   the probation department to schedule a presentence interview of

13   your client to be held within that same two-week window, and to

14   make yourself available for the interview so the matter can be

15   moved forward.

16          I assume the government will order a copy of the

17   transcript of this allocution and will submit it, together with

18   any necessary additional paperwork, to Judge Marrero so that he

19   may act on my recommendation.

20          Is there anything else?

21          MR. NESSIM:  No.  Thank you, your Honor.

22          MS. GATTO:  No, your Honor.  Thank you.

23          THE COURT:  All right.  Best of luck to you,

24   Mr. Medina Serrano.

25          THE DEFENDANT:  Thank you.
                              o0o



ORIGINAL

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2020

Julia Gatto
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8750
Email: julia_gatto@fd.org

### Re: United States v. Joe Medina Serrano, S1 19 Cr. 351 (VM)

Dear Ms. Gatto:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Joe Medina Serrano ("the defendant") to Count One of the above-referenced Superseding Indictment (the "Indictment"). Count One of the Indictment charges that from in or about February 2019 through in or about April 2019, the defendant participated in a conspiracy to distribute and possess with intent to distribute (1) one kilogram and more of mixtures and substances containing a detectable amount of heroin and (2) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, both in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). The offense carries a maximum term of life imprisonment; a mandatory minimum term of imprisonment of ten years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(A) and Title 18, United States Code, Section 3571, of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than the defendant as a result of the offense; and a mandatory $100 special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his involvement in a conspiracy to traffic heroin and fentanyl from in or about February 2019 through in or about April 2019, as charged in Count One of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853: a sum of money in United States currency, representing proceeds traceable to the commission of said offense (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The applicable Guidelines manual is the November 1, 2018 Guidelines Manual.

2. The sentencing guideline applicable to the offense charged in Count One of the Indictment is U.S.S.G. § 2D1.1

3. Pursuant to U.S.S.G. § 2D1.1, Application Note 8(B), the Drug Equivalency Tables are a means of combining different controlled substances to obtain a single offense level. The offense involved the following quantities of controlled substances, which are the equivalent of the following converted drug weight, pursuant to U.S.S.G. § 2D1.1, Application Note 8(D):

| Controlled Substance | Quantity/Weight | Converted Drug Weight |
|---|---|---|
| Heroin | 3,186 grams | 3,186 kilograms |
| Fentanyl | 9,959 grams | 24,897.5 kilograms |
| **Total** | | 28,083.5 kilograms |

4. Pursuant to U.S.S.G. § 2D1.1(c)(3), the base offense level for Count One is 34, because the offense involved at least 10,000 kilograms of Converted Drug Weight but less than 30,000 kilograms of Converted Drug Weight.

5. Pursuant to U.S.S.G. § 2D1.1(a)(5), the offense level is reduced by three levels because the defendant receives a minor role adjustment pursuant to U.S.S.G. § 3B1.2.

5. Pursuant to U.S.S.G. § 3B1.2(a), the offense level is reduced by two because the defendant was a minor participant in the criminal activity.

6. Based on the information currently available to this Office, the defendant appears to meet the criteria set forth in subdivisions (1)-(5) of section (a) of U.S.S.G. § 5C1.2. Accordingly, pursuant to U.S.S.G. § 2D1.1(b)(18), a two-level reduction is warranted.

7. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant

to U.S.S.G. § 3E1.1(b), because the defendant timely provided complete information to the Government concerning his own involvement in the offense(s) and gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 24.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has no criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's Guidelines range is 51 to 63 months' imprisonment. Title 21, United States Code, Section 841(b)(1)(A) requires a statutory minimum term of imprisonment of 120 months. Accordingly, absent relief from the statutory minimum sentence, the defendant's sentence would be at least 120 months. On the basis of the information available to this Office, however, the defendant appears to satisfy the conditions set forth in Title 18, United States Code, Section 3553(f) for relief from the statutory minimum sentence provision. Accordingly, absent new information, the Government will take the position at sentencing that the statutory mandatory minimum sentence does not apply, and that the Guidelines range is therefore in the range of 51 to 63 months (hereinafter "the Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 24, the applicable fine range is $20,000 to $10,00,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the

defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 51 to 63 months' imprisonment, even if the Court denies the defendant's application for safety valve relief and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $10,000,000, and the Government agrees not to appeal any fine that is greater than or equal to $20,000. The defendant also agrees not to appeal any special assessment that is less than or equal

to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Daniel G. Nessim
Assistant United States Attorney
(212) 637-2486

APPROVED:

_____
Jason M. Swergold
Chief, Narcotics Unit

AGREED AND CONSENTED TO:

_____
JOE MEDINA SERRANO

_____ 1/7/20 _____
DATE

APPROVED:

_____
JULIA GATTO
Attorney for Joe Medina Serrano

_____ 1/7/20 _____
DATE



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 17, 2020



## BY HAND

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

### Re: United States v. Joe Medína Serrano,
### S1 19 Cr. 351 (VM)

Dear Judge Marrero:

The defendant in the above-referenced matter entered a guilty plea on January 7, 2020, before Magistrate Judge Debra Freeman. The Government respectfully requests that Your Honor accept the defendant's plea. Enclosed please find for your consideration (1) a proposed Order accepting the defendant's plea, (2) a transcript of the guilty plea allocution; and (3) the defendant's plea agreement with the Government. Sentencing before the Court has not yet been scheduled.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: *Daniel Nessim*

Daniel G. Nessim
Assistant United States Attorney
(212) 637-2486